UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANGELA BURTON,                                                                Plaintiff,

v.                                                        Civil Action No. 3:13-cv-316-DJH

APPRISS, INC.,                                                               Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Angela Burton claims that her former employer, Appriss, Inc., violated the Fair Labor Standards Act by classifying her as an exempt administrative employee to avoid paying her overtime wages.  She has moved for partial summary judgment on the issue of her classification. (Docket No. 37)  Appriss asserts that it properly classified Burton, and seeks summary judgment on the same issue.  Appriss also claims that Burton is precluded from bringing her claim because a state court previously adjudicated a similar dispute between the two parties.  (D.N. 42) Because the state-court judgment was reversed and remanded by an appellate court, Appriss's claim-preclusion argument fails.  But the Court concludes from the undisputed facts that Burton was correctly classified as an administratively exempt employee and will therefore grant Appriss's motion for summary judgment.

## I.     BACKGROUND

Appriss is a software services company.  (D.N. 37-4, PageID # 284)  Burton worked there from May 2011 to May 2012, when Appriss terminated her.  (*Id.*)  Prior to her termination, Burton was an account manager in Appriss's Information Services Group (ISG), which sells software to government agencies and commercial entities.  (D.N. 40-6, PageID # 588; D.N. 40-1,

PageID # 401-02)  Burton's job function is disputed: Burton contends she was merely in a sales role, while Appriss contends that she managed client relationships.  (D.N. 37-1, 40)

Burton sued Appriss in both Jefferson County Circuit Court and this Court.  (D.N. 1, 48-2)  In the state-court action, Burton claimed that she was a non-exempt employee and thus Appriss's failure to pay her commissions based on her sales growth for the year violated Kentucky's wage and hour laws.[1]  (D.N. 48-2, PageID # 777-78 (citing Ky. Rev. Stat. § 337.385))  She also alleged breach of contract and other related claims.  (*Id.*)  In May 2014, a jury returned a verdict in favor of Appriss, finding that Appriss had not breached its contract with Burton.  (D.N. 48-1)  Burton appealed, and the Kentucky Court of Appeals reversed and remanded Burton's breach of contract claim for a new trial.  (D.N. 52, 52-1)

In this Court, Burton alleges that Appriss violated the Federal Labor Standards Act (FLSA) by categorizing her as an exempt administrative employee, resulting in a failure to pay her overtime wages.[2]  (D.N. 1)  Burton has moved for partial summary judgment on the issue of her exempt status.  (D.N. 37-1)  Appriss also moved for summary judgment, arguing that the state court's ruling precludes Burton from maintaining her FLSA claim, or, in the alternative, that Burton was properly classified as an exempt administrative employee.  (D.N. 42-1)  The Court heard oral argument on the cross motions.  (D.N. 57)  After carefully considering the briefs and the oral argument, the Court will grant Appriss summary judgment because Burton qualified as an exempt administrative employee.

---

[1] Whether Burton is entitled to commissions, and whether she is exempt from the FLSA "in the capacity of outside salesman" are not at issue here.  29 U.S.C. § 213(a)(1); (*see* D.N. 37, 42).
[2] Burton originally brought this suit as a collective action but has abandoned the collective action.  (D.N. 1, PageID # 3; D.N. 27; D.N. 37)

2

## II.     STANDARD

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must then establish a genuine issue of material fact with respect to each element of each of her claims. *Id*. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; instead, the non-moving party must present evidence upon which the jury could reasonably find for her. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Ultimately, the Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52).

## III.     DISCUSSION

### A.     Claim Preclusion

Appriss does not present a valid claim-preclusion defense. To successfully assert claim preclusion, Appriss must "show (1) 'a final judgment on the merits' in a prior action; (2) 'a subsequent suit between the same parties or their privies'; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same transaction." *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)). There is no final judgment on the merits

here because the Kentucky Court of Appeals remanded Burton's case for a new trial.  (D.N. 52-1)  Consequently, summary judgment is not warranted on this ground.[3]

**B.      FLSA Exemption**

Burton qualified for the administrative exemption under the FLSA because her work was directly related to the management or general business operations of Appriss and she exercised discretion on matters of significance.  The FLSA requires employers to pay overtime wages to non-exempt employees who work in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  This provision does not apply to individuals "employed in a bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  To qualify for this exception, an employee must be someone:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week
> . . .
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  Burton and Appriss agree that the first factor is met, but they dispute whether Burton's job duties qualify under the second and third factors.

**1.      Directly Related to Management or General Business Operations**

To qualify as an exempt administrative employee, Burton's "primary duty [must have been] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  *Id.*  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing

---

[3] The Court notes that if Burton were to prevail on her state-court claims, then her entitlement to commissions might be at odds with her FLSA claim for overtime wages.  *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).  In any event, the issue is inconsequential because the Court finds that Burton qualified as an exempt administrative employee.

4

production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a); *see Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 644-45 (6th Cir. 2013).  This is referred to as the "administrative-production dichotomy," where an employee "whose job it is to generate the product or service the business offers to the public," known as a production employee, will not qualify for the exception.  *Foster*, 710 F.3d at 644.

In *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988 (6th Cir. 2016), the Sixth Circuit found that underwriters did not qualify as production employees because they did not sell their businesses product to customers, but instead "evaluate[d] the facts surrounding the [loan] application to determine whether the Bank should accept the risk."  815 F.3d at 994.  Similarly in *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 576-77 (7th Cir. 2012), the Seventh Circuit found that sales representatives did not qualify as production employees because the representatives did not produce the employer's product, nor did they generate specific sales. Instead, the representatives promoted sales, and, "[t]o the maximum extent possible, their work [was] based on maintaining continuous and regular contact with the physicians to whom they [were] assigned, anticipating their objections and concerns and addressing them on behalf of their employers."  *Id*. at 577.

Burton's primary job function is similar to those of the plaintiffs in *Lutz* and *Eli Lilly*. That is, the evidence demonstrates that Burton managed client relationships.  Rick Cartor, a former Vice President of Human Resources at Appriss, testified that account managers had an active role in "perpetuating" and "managing" contracts as well as selling customers additional products if given the opportunity.  (D.N. 40-6, PageID # 604-05)  Later in his deposition, Cartor went line by line through the account-manager job description, which Burton contends is only

for an account manager III,[4] and agreed that account managers are responsible for evaluating existing relationships, determining customers' needs, and recognizing sales opportunities, among other things. (*Id.*, PageID # 655-57) The president of ISG, Paul Colangelo, testified to the same effect. (D.N. 40-1, PageID # 35-36) And although a plaintiff's testimony alone may be sufficient to defeat a defendant's motion for summary judgment in an FLSA case, *see Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015), Burton's testimony here does not contradict any of the material facts Appriss relies on in moving for summary judgment. *See id.* at 206. In fact, Burton's testimony alluded to her role as more than simply selling Appriss's product: "I maintained customer relationship communication on a near daily basis with my clients to the best of my ability." (D.N. 37-4, PageID # 298) Thus, the Court finds that Burton's role was similar to the role of the sales representatives in *Eli Lilly* in that she cultivated relationships with Appriss's customers and addressed their concerns.

Burton's contention that she was primarily in a sales role relies heavily on a statement taken out of context. During Cartor's deposition, he stated that the account manager position "evolved into more of a sales role." (D.N. 40-6, PageID # 604-05) But Cartor also said, in the same sentence, that this sales role was in addition to "account management responsibilities." (*Id.*) Burton also relies heavily on the testimony of Pamela Perry, a current Vice President of Human Resources, suggesting that an account manager does not fit within any of the "departments from which employees frequently qualify for the administrative exemption." *Eli Lilly*, 679 F.3d at 574; *see* 29 C.F.R. § 541.201(b); (D.N. 37-7, PageID # 340-42). This list, however, is merely illustrative, not exhaustive. *See* 29 C.F.R. § 541.201(b). And the evidence

---

[4] This argument is not compelling. The evidence indicates that the only differences between the various levels of account manager are the level of autonomy afforded to the employee, and the increased salary for more senior account managers. (*See* D.N. 40-3, PageID # 501)

demonstrates that Burton was responsible for managing client relationships, which the Court interprets as a "similar activit[y]" to those departments mentioned in 29 C.F.R. § 541.201(b). (D.N. 40-1, PageID # 449; D.N. 40-6, PageID # 604-05, 656, 664)  Consequently, the second factor is met.

### 2.       Exercise of Discretion and Independent Judgment

Burton's job duties also satisfied the third factor of the administrative exception.  To meet this factor, an employee's primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).  The regulation provides substantial detail about what conduct qualifies.  It states that "the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).  It also lists factors to be considered in making this determination, such as "whether the employee provides consultation or expert advice to management." 29 C.F.R. § 541.202(b).   The regulation further states that "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c).  Finally, it states that the term "'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a); *see Foster*, 710 F.3d at 646.

From the record, the Court concludes that Burton exercised discretion and independent judgment.  She testified that she kept her own hours, and her job function was inherently discretionary. She maintained customer relationships and determined and prioritized clients' needs.  (D.N. 37-4, PageID # 295, 298; D.N. 40-1, PageID # 417)  Cartor testified that account managers had "a great deal of autonomy in terms of travel . . . where they're going to be, what

they're going to do, with whom they'll be meeting and . . . where they're working and what they're doing." (D.N. 40-6, PageID # 607)   And part of Burton's job duty was to provide consultation to management.[5] (*Id.*, PageID # 642-43; D.N. 40-1, PageID # 459-60)

In arguing that she did not exercise discretion, Burton partially relies on the undisputed fact that she was supervised.  (D.N. 37-1, PageID # 244)  But this does not create an issue of material fact.  As detailed above, Burton still exercised discretion within this supervision.  (*See* D.N. 37-11)  Moreover, the Court expects that first-year employees will have their "decisions or recommendations . . . reviewed at a higher level."  29 C.F.R. § 541.202(c).  And contrary to Burton's contention that she merely input sales data into "Salesforce,"[6] which would weigh against finding that this factor is met, the record suggests that Salesforce helped "account manager[s] organize their day, prioritize what they have to get done, deliverables that need to be delivered . . . and allows them to look at customer[s] to see what products they are using versus not using."  (D.N. 40-1, PageID # 416)  Thus, the Court finds that there is no dispute for the jury, and that Burton exercised discretion and independent judgment.

With respect to "matters of significance," the evidence establishes that account managers do "make decisions that significantly impact the business."  *Lutz*, 815 F.3d at 997-98.  As stated above, "'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).  The Sixth Circuit has found that "the work itself . . . must be of substantial importance—not the size of the consequences or loss that may result from improper performance of the employee's duties."  *Lutz*, 815 F.3d at 997 (quoting *Martin v. Ind.*

---

[5] Contrary to Burton's contention, it is insignificant whether this advice was "expert advice." The regulation clearly states: "whether the employee provides consultation or expert advice to management."  29 C.F.R. § 541.202(b).

[6] Salesforce is a computer tool used to help account managers with their clients.  (D.N. 40-1, PageID # 416)

*Mich. Power Co.*, 381 F.3d 574, 583 (6th Cir. 2004)).  In *Lutz*, the Sixth Circuit found that the plaintiffs met this criteria because they determined the risk their bank would take on for any particular loan; this risk ranged between $250,000 and $1,000,000.  *Id.* at 997-98.

Burton made "decisions that significantly impact the business" by choosing how to maintain over $250,000 in client business.  815 F.3d at 997-98; (D.N. 47-4, PageID # 286-87). In 2014, Burton made $266,859 in sales—exceeding Appriss's target for her—which is indicative of the amount of business she managed.  (*Id.*)  Similar to the underwriting work in *Lutz*, which was a "matter of significance," Burton's management of customer relationships, *see* (D.N. 37-4, PageID # 295, 298; D.N. 40-1, PageID # 417), was of utmost importance to Appriss, whose business relies on the software sales that are intrinsic to effective relationship management.  (D.N. 40-6, PageID # 588; D.N. 40-1, PageID # 401-02)  Indeed, "the work itself," managing Appriss clients, is of "substantial importance" to Appriss.  *Lutz*, 815 F.3d at 997 (internal quotations omitted).  Because Burton "evaluat[ed] possible courses of conduct" and made independent decisions, *see* 29 C.F.R. 541.202(a), such as prioritizing clients' needs (D.N. 37-4, PageID # 295, 298; D.N. 40-1, PageID # 417), and these decisions have a significant impact on Appriss, the Court finds that Burton exercised discretion with respect to matters of significance.

### III.    CONCLUSION

The record demonstrates that Burton's work was directly related to the management or general business operations of Appriss and that she exercised discretion on matters of significance:  she managed client relationships, exercised control over her own schedule and how she interacted with customers, and made $266,859 in sales.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1)      Angela Burton's Motion for Partial Summary Judgment (D.N. 37) is **DENIED**.

(2)      Appriss, Inc.'s Motion for Summary Judgment (D.N. 42) is **GRANTED**.

(3)      A separate judgment will issue this date.

June 14, 2016

**David J. Hale, Judge**
**United States District Court**

10